UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Cr. A. No. 09-00160-01 |
| VERSUS | JUDGE ROBERT G. JAMES |
| AMON RASHAD PEOPLES | MAG. JUDGE KAREN L. HAYES |

RULING

Before the Court is Defendant Amon Rashad Peoples' Motion to Withdraw Guilty Plea ("Motion to Withdraw") [Doc. No. 88]. For the following reasons, the Motion to Withdraw is DENIED.

**I.   FACTS**

On July 6, 2009, the Government filed a Complaint alleging that Defendant violated 18 U.S.C. § 1029 by committing fraud and related activity in connection with access devices. In support of the Complaint, the Government provided the affidavit of Secret Service Agent Darron Craft, detailing his investigation of Defendant's alleged criminal activities.

On the basis of the Complaint and affidavit, on the same day, July 6, 2009, an arrest warrant issued for Defendant.

On July 13, 2009, Magistrate Judge James D. Kirk signed a temporary order of detention pending Defendant's initial appearance and detention hearing.

On July 15, 2009, Defendant appeared before Magistrate Judge Karen L. Hayes. At that time, Magistrate Judge Hayes found Defendant to be indigent and appointed Ronald K. Cook to represent him. She determined that, because Defendant had a pending warrant from the State of

Texas, he was not eligible for release. Defendant waived a detention hearing. Defendant was instructed to re-urge his motion for release if he became eligible.

On July 24, 2009, a six-count Indictment issued against Defendant. In Count 1, Defendant is charged with conspiring with Co-Defendant Tonyell Toliver, and others known and unknown to the grand jury, to commit access device fraud in violation of 18 U.S.C. §§ 371 and 1029(a)(3). Counts 2 and 3 charge that Defendant committed the offense of access device fraud in violation of 18 U.S.C. § 1029(a)(3) and (4). Count 4 charges that Defendant committed the offense of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (b)(2) and 18 U.S.C. § 2. Count 5 charges that Defendant committed attempted bank fraud in violation of 18 U.S.C. §1344(1) and (2). Count 6 contains a forfeiture allegation.

On July 30, 2009, while represented by Mr. Cook, Defendant was arraigned and pled not guilty to all counts.

After the initial proceedings in this matter, on August 13, 2009, Mr. Cook, moved to withdraw as counsel and to substitute Stephen Jefferson, who had been retained by Defendant. The Court granted Mr. Cook leave to withdraw, and Mr. Jefferson was substituted as Defendant's retained counsel.

After a September 9, 2009 status conference with counsel, Magistrate Judge Hayes set trial for March 15, 2010. On Defendant's motion, on September 23, 2009, Magistrate Judge Hayes granted Defendant's waiver of speedy trial.

On December 21, 2009, Magistrate Judge Hayes held a detention hearing for Defendant. After testimony and evidence, Magistrate Judge Hayes ordered that Defendant be detained pending trial. However, prior to the close of the hearing, the parties notified the Court that a plea

agreement had been reached. A plea date was set for January 15, 2010.

On January 15, 2010, however, Defendant notified the Court that he would like more time to consider his plea. Magistrate Judge Hayes granted Defendant an extension, but reminded Defendant that he had to enter his guilty plea by February 11, 2010, to obtain full benefit for acceptance of responsibility.

On February 4, 2010, Mr. Jefferson notified the Court that Defendant did wish to enter a guilty plea. A hearing was set on the deadline, February 11, 2010.

On February 11, 2010, Magistrate Judge Hayes held the change of plea hearing. Defendant entered a guilty plea to Counts 1, 4, and 5. A thirteen-page plea agreement was filed on that same date, and Agent Craft testified and provided a factual basis for the plea. As part of the agreement, Defendant surrendered the property described in the forfeiture allegations.

On the same day, Magistrate Judge Hayes issued a Report and Recommendation, recommending that the Court find Defendant was competent to plead guilty and that the Court accept his change of plea.

On March 11, 2010, having received no objections, the Court adopted Magistrate Judge Hayes' Report and Recommendation and accepted Defendant's guilty plea.

On May 17, 2010, on motion of the Government, a preliminary order of forfeiture was entered.

On June 15, 2010, the Court held a sentencing hearing. After meeting with counsel and the probation officer in Chambers to discuss certain objections raised by Defendant, the Court was prepared to sentence Defendant. However, Mr. Jefferson notified the Court that Defendant wished to discharge him, and, thus, he moved to withdraw from the case. After questioning

Defendant on the record, the Court granted Mr. Jefferson's oral motion to withdraw.  At Defendant's request, and because Defendant's financial information was already of record in the case, the Court appointed the Office of the Federal Public Defender to represent Defendant or to appoint an attorney from the CJA Panel.  Sentencing was re-set for September 7, 2010.

In light of the continuance, the Government informed the Court that it intended to provide information to the probation officer on additional victims and losses that could be substantiated.  Once that information was received by the Probation Officer, he was to issue an amended Pre-Sentence Investigation Report.

On June 24, 2010, Walter Caldwell was appointed to represent Defendant.

On August 5, 2010, Defendant submitted a letter motion, indicating that he wished to discharge Mr. Caldwell and represent himself in these proceedings.  In light of Defendant's motion, the Court converted the sentencing hearing set on September 7, 2010, at 9:30 A.M., to a hearing on Defendant's motion for self representation.

On August 16, 2010, on the Government's motion, the Court entered a final order of forfeiture.  The same day, the Court granted Defendant's motion for extension of time to file objections to the Pre-Sentence Investigation Report pending the ruling on the motion for self representation.

On August 25, 2010, Defendant filed the pending Motion to Withdraw Guilty Plea [Doc. No. 88].  The Court set the motion for hearing on September 7, 2010, at 9:30 A.M.

On September 1, 2010, the Government filed a memorandum in opposition to Defendant's Motion to Withdraw Guilty Plea [Doc. No. 90].

On September 7, 2010, the hearing on Defendant's pending motions was continued to

October 4, 2010, because of other pending criminal matters.

A hearing was held on October 4, 2010. After questioning, the Court found that Defendant had knowingly and voluntarily determined that he wished to represent himself and granted his motion for self representation. The Court then held a hearing on Defendant's Motion to Withdraw Guilty Plea. Defendant argued his motion, *pro se*, and presented evidence in support of the motion. The Government, which had previously filed a written opposition and supporting exhibits, also presented argument in opposition to his motion.

After considering the evidence and argument presented, the Court orally denied Defendant's Motion to Withdraw, and now issues these written reasons.

## II.     LAW AND ANALYSIS

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea after it has been accepted by the court only when the defendant can show a fair and just reason for requesting the withdrawal. It is improper for a defendant to use a guilty plea as a "means of testing the weight of the potential sentence – a primary policy ground for denying plea changes." *United States v. Simmons*, 497 F.2d 177, 179 (5th Cir. 1974). The burden is on the defendant to demonstrate that there is a fair and just reason for the court to allow him to withdraw the plea. *United States v. Brewster*, 137 F.3d 853, 858 (1998). The Fifth Circuit has provided seven factors that a court should weigh in deciding whether to allow the withdrawal:

(1) whether the defendant has asserted his innocence;

(2) whether withdrawal will prejudice the government;

(3) whether the defendant delayed in filing his withdrawal motion;

(4) whether withdrawal would substantially inconvenience the court;

>    (5) whether close assistance of counsel was available to a defendant;
>
>    (6) whether the plea was knowing and voluntary; and
>
>    (7) whether withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir.1984).  These factors are guidelines, but the court should view the totality of circumstances surrounding the request for withdrawal.  *Id.*

Defendant does not assert his innocence to all charges in this matter, but now denies his guilt as to Count 4, aggravated identity theft, and further denies that he conspired with unnamed individuals who have since pled guilty in the Middle District of Louisiana.

Prior to his guilty plea on February 11, 2010, Defendant was given a full and fair opportunity to review the charges with not one, but two attorneys.  While represented by Mr. Jefferson, Defendant requested and was given an almost one-month extension of his change of plea hearing in order to investigate his case and discuss it further with his attorney.   The change of plea hearing was held on February 11, 2010, the last possible day Defendant could plead guilty and receive the benefit of the Government's motion to reduce his offense level one additional point for acceptance of responsibility.

The arguments and claims now raised by Defendant are not new.  At the February 11, 2010 change of plea hearing, Defendant was given ample opportunity to and, in fact, did raise the same concerns to Magistrate Judge Hayes that he again raised to this Court on October 4, 2010.  During the lengthy change of plea hearing, Defendant specifically stated that he had ample opportunity to discuss his case with his then-attorney, Mr. Jefferson, and that he was satisfied with Mr. Jefferson's representation of him.  In his own words, Defendant explained that he was pleading guilty to Count 1 and that by doing so he was admitting that he conspired to commit

access device fraud. [Doc. No. 90, Exh. A, pp. 8-9].

However, when the Magistrate Judge asked him if he understood the charges against him in Count 4 for aggravated identity theft, Defendant questioned whether he would be able to "object" to whether he had knowingly transferred, possessed, and used the access device machines "for aggravated identity theft." [Doc. No. 90, Exh. A, p. 10]. The Magistrate Judge told him that if he pled "guilty to the charge in the indictment, . . . he [would] not be able to contest [his] guilt for that charge." [Doc. No. 90, Exh. A p. 10]. Mr. Jefferson explained that Defendant believed his conduct in using fictitious names on credit cards could not constitute aggravated identity theft and that he had informed Defendant that he would be able to make that objection to this Court.

Further discussion ensued. The Assistant United States Attorney Cytheria Jernigan explained that she believed Defendant's confusion stemmed from his belief that only a person's name can constitute a form of identification. By statute, a credit card number that is unique to an individual is also a means of identification, and Defendant had used credit card numbers belonging to actual people.

Ostensibly dropping this argument, Defendant then began arguing that the credit card numbers Ms. Jernigan referred to were from Texas and Indiana, that the charges in Texas had been dismissed, and that the charges in Indiana were still pending. He reiterated that Louisiana state troopers had apprehended him on attempting bank fraud and access wire fraud, but he did not have any credit card numbers on his person at the time of the arrest. The Magistrate Judge responded that federal jurisdiction is not limited to Louisiana and that the counts against him could include activity in other states. Finally, she specifically stated, "I can't tell you whether

you want to plead guilty or not, but I can tell you that the fact that those things happened in another state does not preclude the government, the federal government, from prosecuting you here if any part of those activities occurred in this state." [Doc. No. 90, Exh. A, p. 13].

Ms. Jernigan further clarified that she had provided some information about Defendant's conduct in Texas because she believed that it might come into evidence at trial under Federal Rule of Evidence 404(b), but the Texas conduct was not part of the crime charged. [Doc. No. 90, Exh. A, p. 13]. As for Defendant's conduct in Indiana, Ms. Jernigan indicated that his conduct in that state would be part of the Government's case if it went to trial because that conduct was within the time frame of the conspiracy, as charged in the Indictment. [Doc. No. 90, Exh. A, p. 13]. Ms. Jernigan explained that Defendant's conduct with unnamed individuals in the Middle District of Louisiana was also part of the conspiracy.

After this lengthy discussion, Mr. Jefferson stated on the record that, "[a]fter discussing it with Mr. Peoples, I think he understands now. And if you ask him the question again, I think he could answer." [Doc. No. 90, Exh. A, p. 14]. When the Magistrate Judge again inquired if he understood the charges against him in Count 4, Defendant replied, "yes, ma'am." [Doc. No. 90, Exh. A., p. 14]. Later, in response to specific questioning by the Magistrate Judge, Defendant stated that he did commit the crimes charged in Counts 1, 4, and 5, without expressing any other concerns.

Finally, Agent Craft testified as to the factual basis for Defendant's guilty plea. Afterward, the Magistrate Judge asked Defendant if he agreed with Agent Craft's testimony. Although represented by counsel, Defendant was allowed to query Agent Craft directly. He asked Agent Craft if co-conspirators had said that they were "physically affiliated" with

8

Defendant, contending that emails only would be insufficient evidence to convict him because the emails could have been sent to anyone. On re-direct, Agent Craft explained that he had obtained email communications between Defendant and three individuals in the Middle District of Louisiana. Defendant then denied that he was communicating with these persons. When Ms. Jernigan pointed out that the three persons also said that they physically traveled with Defendant, he also denied those accusations. The Magistrate Judge then again explained to Defendant:

> Either you agree that this is what happened or, you know, if you're telling me that this did not happen, that this is not true and that you are not guilty, then you need to say so. But if you're telling me that you are questioning the amount of proof that the government has of something that you're agreeing happened, then that's another matter. If you're trying to tell me that you don't think this is enough to carry their burden of proof at trial, that's kind of a decision that I would have to make whether the essential elements of the offense have been alleged here.

[Doc. No. 90, Exh. A, p. 43]. Defendant then responded that "[t]he majority of things that they're saying in this plea I'm guilty of." [Doc. No. 90, Exh. A, p. 43]. After another discussion off the record, Mr. Jefferson reported that Defendant "is satisfied that Agent Craft has given enough evidence," and Defendant stated that he did agree with Mr. Jefferson's statement, declining to ask Agent Craft any more questions. [Doc. No. 90, Exh. A, pp. 43-44]. After these specific discussions with Defendant, the Magistrate Judge found that Defendant was competent to enter into a guilty plea and that he had done so on a knowing and voluntary basis. She then issued a Report and Recommendation to this Court that it accept Defendant's plea.

      If Defendant still had concerns about his guilty plea, he could have filed an objection to the Report and Recommendation or moved to withdraw the plea before it was accepted by this Court, but he did not. The Court accepted his guilty plea without objection on March 11, 2010. Although Defendant was originally set for sentencing on May 14, 2010, his sentencing hearing

was continued to June 15, 2010, because of other criminal matters. Defendant did not file any motion to withdraw his guilty plea or other pleading to indicate to the Court that he had any concerns about his guilty plea or his representation in the four months between his guilty plea and sentencing.

At sentencing, Defendant was represented by Mr. Jefferson who had presented objections to the Pre-Sentence Investigation Report on his behalf. After the Court met in Chambers with counsel and the probation officer and counsel had notified Defendant of his potential sentence range, Defendant informed Mr. Jefferson that he wished to discharge him. Mr. Jefferson then notified the Court of Defendant's wishes. After confirming on the record that Defendant wished to discharge Mr. Jefferson, the Court allowed Mr. Jefferson to withdraw. Noting that Defendant had previously qualified for appointment of counsel, the Court ordered the Office of the Federal Public Defender to represent Defendant or to appoint an attorney from the CJA Panel. Because Defendant's new counsel would have to become familiar with the case, the Court set a new sentencing hearing for September 7, 2010.

Following the hearing, a third attorney, Walter Caldwell, was appointed to represent Defendant. On August 5, 2010, after meeting with Mr. Caldwell, Defendant filed a *pro se* letter motion to represent himself. As a result, the Court converted Defendant's September 7, 2010 sentencing hearing to a hearing on his motion for self representation. Before that hearing could be held, on August 25, 2010, Mr. Caldwell filed this Motion to Withdraw Guilty Plea on Defendant's behalf, which was also set for hearing on September 7, 2010.

Although counsel and Defendant were present on September 7, 2010, the hearing had to be continued because of other pending criminal matters. The hearing was conducted on

Defendant's motions[1] on October 4, 2010.  At that hearing, Defendant made arguments similar to those he made to Magistrate Judge Hayes at his February 11, 2010 guilty plea hearing *before* he decided to complete the guilty plea.  He fully admitted his guilt to attempted bank fraud and admitted that he committed access device fraud.  He again contested that he had committed aggravated identity theft and denied factually that he was in a conspiracy with persons in the Middle District of Louisiana.[2]  He also made some arguments that under the "true" definition of conspiracy, he should not be held liable under Count 1, and he is being improperly held accountable for the relevant conduct of others in the Pre-Sentence Investigation Report.  However, Defendant voluntarily and knowingly chose to plead guilty to the crimes of conspiracy to commit access device fraud in Count1 and aggravated identity theft in Count 4, as well as attempted bank fraud in Count 5, after discussions with Magistrate Judge Hayes and his attorney, Mr. Jefferson, about these same issues.  To the extent that Defendant has objections to the Pre-Sentence Investigation Report, he will be permitted to make those objections prior to his

---

[1] Defendant also requested and received a second detention hearing.  After determining that Defendant had failed to present a fair and just reason to withdraw his guilty plea, the Court found that Defendant had not rebutted the presumption in favor of detention under 18 U.S.C. § 3143(a)(1) because of evidence that he is a flight risk.

[2] It is not clear, but Defendant did not appear to contest factually that he conspired with Co-Defendant Tonyell Toliver, which would be enough to convict him of Count 1.  He argued at the hearing that evidence against him was insufficient to support a conspiracy with Ms. Toliver because he was originally arrested for attempted bank fraud and was only later charged with the other crimes when agents found credit card information at Ms. Toliver's home.  Defendant's legal argument has no merit and also fails to provide a fair and just reason to allow him to withdraw his guilty plea.

In addition to Ms. Toliver, another individual, Shawn Batiste, has pled guilty in this Court to conspiring with Defendant to commit access device fraud.  *See United States v. Batiste*, Crim. A. No. 09-00140 (W.D. La.).  In the Middle District of Louisiana, two individuals, Dominique Flynn and Demetricus Watson, have pled guilty to related charges.  *See United States v. Simpson*, 09-00040 (M.D. La.).

sentencing hearing.

In sum, Defendant, who has had the benefit of legal advice from three attorneys, waited six months to withdraw his guilty plea for reasons that, for the most part, he had already discussed with Magistrate Judge Hayes. He gave no indication that he wished to withdraw his plea until after he was notified of the advisory sentence he faced under the United States Sentencing Guidelines. To allow Defendant to withdraw his guilty plea would, at this point, substantially inconvenience the Court and would be a waste of judicial resources.

After application of all the *Carr* factors, the Court finds that Defendant has not met his burden in showing that setting aside the guilty plea would be fair and just.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Withdraw [Doc. No. 88] is DENIED.

MONROE, LOUISIANA, this 6th day of October, 2010.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE